UNITED STATES DISTRICT COURT
THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: DAVOL, INC./C.R. BARD, INC., POLYPROPYLENE HERNIA MESH PRODUCTS LIABILITY LITIGATION | Case No. 2:18-md-2846<br><br>Judge Edmund A. Sargus, Jr.<br>Magistrate Judge Kimberly A. Jolson |

**This document relates to:**
*Leto et al v. C.R. Bard, Inc. et al*
Case No. 2:21-cv-5736

## ORDER

This matter is before the Court on Defendants Key West HMA, Inc. d/b/a Lower Keys Medical Center and Key West HMA, LLC d/b/a Lower Keys Medical Center's (collectively "Key West") Motion to Dismiss Plaintiffs' Amended Complaint (ECF No. 20). Key West claims that Plaintiffs have failed to state a claim against Key West for which relief can be granted because the claims are either "(1) not valid under Florida law or (2) do not plead sufficient facts to survive a motion to dismiss." (*Id.* at PageID #408.) Key West also claims that Plaintiffs have "missed the statute of limitations for any potential claims against [Key West]" because Mr. Leto's surgery was in 2006, the statute of limitations would have run in 2010, and Plaintiffs did not file their complaint until 2021. For the following reasons, the Court **GRANTS** Key West's Motion to Dimiss the Amended Complaint (ECF No. 20), **DENIES AS MOOT** Key West's earlier Motion to Dismiss (ECF No. 11), and **DENIES AS MOOT** Plaintiffs' Motion for Suggestion of Remand (ECF No. 12).

### I. Background

On December 18, 2006, Plaintiff Darold P. Leto underwent laparoscopic repair of an abdominal hernia at Key West's hospital, Lower Keys Medical Center, in Monroe County, Florida.

(ECF No. 17 at PageID #382.)  The hernia was repaired using a Composix L/P hernia mesh, which was manufactured and distributed by Defendants C.R. Bard, Inc., and Davol, Inc. (collectively "Bard").  (*Id.*)  Plaintiffs claim that the Composix L/P mesh was defective and caused Mr. Leto to experience:

> excruciating abdominal pain, chronic inflammation and generalized abdominal pain, bloody stool and urine, constipation, loose and uncontrollable stool, cramping, disability, recurrence of hernia, foreign body response, rejection, infection, scarification, improper would healing, allergic reaction, adhesions to internal organs, erosions, abscesses, fistula formation, granulomatous response, seroma formation, nerve damage, tumor foundation, tissue damage, and other complications as a result of the Composix L/P hernia mesh.

(*Id.* at PageID #383.)  On October 29, 2017, Mr. Leto underwent surgical repair for small bowel obstruction, exploratory laparotomy, lysis of adhesions, removal of the Composix L/P hernia mesh, and ventral hernia re-repair.  (*Id.* at PageID #384.)

This case was originally filed on October 25, 2021, in the Circuit Court for the Sixteenth Judicial Circuit, Monroe County, Florida.  (ECF No. 1 at PageID #1.)  On November 24, 2021, Bard removed the case to the United States District Court for the Southern District of Florida based on diversity jurisdiction under 28 U.S.C. §§ 1332, 1441(a), and 1446(b).  (*Id.*)  On December 10, 2021, the United States Judicial Panel on Multidistrict Litigation ("JPML") transferred the case to this Court as part of MDL No. 18-md-2846, In re: Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Products Liability Litigation.  (ECF No. 8.)  Key West filed a Motion to Dismiss under Rule 12(b)(6) on December 30, 2021.  (ECF No. 11.)  Plaintiffs then filed an Amended Complaint on January 31, 2022.  (ECF No. 17.)  Key West filed a Motion to Dismiss the Amended Complaint on February 14, 2022.  (ECF No. 20.)  Plaintiffs have also filed a Motion for Suggestion of Remand.  (ECF No. 12.)

## II. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In determining this, a court must "construe the complaint in the light most favorable to the plaintiff." *Inge v. Rock Fin., Corp.*, 281 F.3d 613, 619 (6th Cir. 2007). Furthermore, "[a]lthough for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, [it is] 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556) (internal quotations omitted).

## III. Analysis

### A. Key West's Motion to Dismiss

#### 1. Strict Products Liability Claims

Plaintiffs argue that Key West should be held liable under the doctrine of strict products liability for the implantation of the allegedly defective Composix L/P mesh. (ECF No. 25 at PageID #447.) Plaintiffs claim that Mr. Leto "enjoyed contractual privity with [Key West] as [its] customer" and was "the ultimate retail consumer of the subject Composix L/P hernia mesh." (ECF No. 17 at PageID #383.) According to Plaintiffs, Key West was "not the ultimate consumer of the Composix L/P hernia mesh product, but obtained the product from the stream of commerce in a role analogous to a retail business that obtains products from wholesalers and distributors for ultimate resale to individual consumers." (*Id.*) Plaintiffs' claims against Key West are not malpractice claims, but instead Plaintiffs state that "this is a straight products liability action

3

involving the sale by [Key West] of a defective product." (ECF No. 25 at PageID #446.) According to Plaintiffs, the application of the Composix L/P mesh during his surgery at Key West's hospital constituted a sale or commercial transfer of the product. (*Id.* at PageID #448.)

In response, Key West claims that "Florida courts have repeatedly stated that a hospital is not liable under the doctrine of strict products liability for a defective medical device employed by the hospital during a procedure that ultimately harms a patient." (ECF No. 20 at PageID #410.) Key West points to *North Miami General Hosp., Inc. v. Goldberg*. In *Goldberg*, the court held that a hospital was not strictly liable when a patient sustained burns from an allegedly defective product used during a surgical procedure. *North Miami General Hosp., Inc. v. Goldberg*, 520 So. 2d 650 (Fla. Dist. Ct. App. 1988). In so holding, the court noted that:

> Hospitals are not ordinarily engaged in the business of selling products or equipment used in the course of their primary function of providing medical services, and strict liability will not be imposed where an injured party alleges that professional services connected with the use of a product, rather than the product itself, were defective, or where the professional services could not have been rendered without using the product.

*Id.* at 652 (quoting 2 Am.Prod.Liab.3d § 16:83 (1987)). The court noted that "it has been widely held that strict liability may not be invoked by a patient against a hospital or physician in the use of a defective medical implement," and also cited: *Hector v. Cedars–Sinai Medical Center*, 180 Cal.App.3d 493 (1986) (hospital not strictly liable for defective pacemaker because it was not a seller of pacemakers but a provider of medical services); *Silverhart v. Mount Zion Hosp.*, 20 Cal. App. 3d 1022 (Ct. App. 1971) (hospital not strictly liable for defective surgical needle broken in plaintiff during surgery, and was not a seller engaged in the business of selling needles but a user or consumer of such a needle); *Magrine v. Krasnica*, 94 N.J. Super. 228 (Co. 1967), *aff'd sub nom. Magrine v. Spector*, 53 N.J. 259 (1969) (dentist not strictly liable for defective needle broken in plaintiff's gum during treatment); and *Probst v. Albert Einstein Medical Center*, 82 A.D.2d 739

4

(1981) (hospital not strictly liable for defective spinal rod broken after surgical implantation, and hospital was not a seller of the metal rod but the insertion of the metal rod was incidental to the medical services provided). Key West also cites to *NME Hosps., Inc. v. Azzariti*, which held that "[a] hospital that utilizes an alleged defective product only in the course of its primary function of providing medical services is not subject to an action in strict liability where the professional services could not have been rendered without using the product." *NME Hosps., Inc. v. Azzariti* 573 So. 2d 173, 173 (Fla. Dist. Ct. App. 1991).

Plaintiffs attempt to distinguish their claims against those in the cases cited by Key West and cited by the court in *Goldberg*. Plaintiffs argue that *Goldberg* itself is distinguishable because the electro-surgical grounding pad in *Goldberg* was not sold or transferred to the patient but was merely employed during surgery. (ECF No. 25 at PageID #447.) According to Plaintiffs, their case is distinguishable because Mr. Leto's surgery could have been done without using the allegedly defective Composix L/P, and because unlike in *Goldberg*, the hernia mesh was "transferred or disposed of" to him by Key West. (*Id.*) Plaintiffs go on to claim that the other cited cases are also distinguishable. For example, in *Probst*, the court found that a hospital "did not technically sell the metal rod [that was surgically inserted into the plaintiff's spinal column] to the plaintiff." *Probst*, 82 A.D.2d 739 at 739. However, in response to *Probst*, Plaintiffs argue that because their amended complaint "specifically alleges that [Key West] did sell the defective [Composix L/P mesh] to Mr. Leto," it cannot be dismissed because "all well-pleaded allegations must be accepted as true." (ECF No. 25 at PageID #448–49.) Similarly, in *Hector*, the appellate court affirmed summary judgment for the hospital on the ground that the hospital was not "engaged in the business of distributing" pacemakers, which are implanted medical devices, to the public. 180 Cal. App. 3d at 504. The court acknowledged that the hospital did not "stock or recommend

5

pacemakers or provide them to the general public, [but] deal[t] with pacemakers only in the context of the courses of treatment for particular patients." *Id.* Importantly, the court noted that "[t]he essence of the relationship between hospital and patient is the provision of professional medical services necessary to effect the implantation of the pacemaker—the patient *does not enter the hospital merely to purchase a pacemaker but to obtain a course of treatment which includes implantation of a pacemaker*." *Id.* at 505 (emphasis added). The court concluded that "[a]s a provider of services rather than a seller of a product, the hospital is not subject to strict liability for a defective product to the patient during the course of his or her treatment." *Id.* In the case at hand, Plaintiffs again acknowledge *Hector* but claim that it is distinguishable simply because their amended complaint "clearly alleges" that Key West is in fact a seller of the Composix L/P mesh, and "it is the law that all well-pleaded allegations must be accepted as true." (ECF No. 25 at PageID #449.)

Plaintiffs' contention that Key West sold the Composix L/P mesh to Mr. Leto is contrary to Florida caselaw. In *Porter v. Rosenberg*, the court noted that:

> [T]here are instances when a physician transfers a product to a patient via a medical procedure in which the physician may be performing a role that has some attributes similar to a retailer or other seller of a product. The manufacturer may be relying on the physician to promote its particular product within the chain of distribution to the general public. We further note that there is a qualitative difference between a physician distributing breast implants through implantation and utilizing a defective metal pin in a hip reconstruction. In the case of the breast implant, the procedure is being performed to implant the product; in the case of the metal pin, the use of the pin is incidental to the main procedure.
>
> Nonetheless, *we cannot ignore the fact that even with a product, such as a breast implant, a physician is exercising his or her professional judgment in determining what medical procedure to perform and then in selecting the appropriate product to utilize in connection with the procedure.* The provision of the product is integrally related to the professional services and skill offered by the medical care provider. *Compare Thomas v. St. Joseph Hosp.,* 618 S.W.2d 791 (Tex.Civ.App. 1981) (where provision of product such as hospital gown is unrelated to the essential professional relationship, strict liability may be applied.)

650 So. 2d 79, 82 (Fla. Dist. Ct. App. 1995) (emphasis added). The court went on to find that "[i]f the predominant purpose of the physician-patient relationship for that transaction is the provision of medical services based upon the physician's medical judgment, skill, or expertise, the malpractice statute applies and strict liability is inapplicable." *Id.* at 83. Plaintiffs acknowledge these cases, but argue that because their amended complaint "specifically alleges that [Key West] did sell the defective [Composix L/P mesh] to Mr. Leto," it cannot be dismissed because "all well-pleaded allegations must be accepted as true." (ECF No. 25 at PageID #448–49.) Essentially, Plaintiffs assert that simply because the Amended Complaint states that Key West was "engaged in the business of selling [the Composix L/P mesh]," the Court must accept that argument as true despite contradictory authority. (*Id.* at PageID #449.)

Plaintiffs repeatedly stress that they are not bringing claims against Key West under a theory of professional malpractice and state that "this is a straight product liability action involving the sale by [Key West] of a defective product." (ECF No. 25 at PageID #446.) However, the District Court for the Southern District of Florida, applying Florida law, has held that "[w]hen a patient is harmed by a defective product used in surgery, her claim is properly brought under Florida's medical malpractice statutes, *not under a theory of strict liability*." *Christensen v. Mentor Corp.*, No. 08-60371-CIV, 2008 WL 2074422, at *2 (S.D. Fla. May 15, 2008) (emphasis added). In another case, the District Court for the Southern District of Florida denied a motion for remand and dismissed claims against a hospital under very similar circumstances to this case. A patient attempted to bring a strict liability claim against the hospital where his hernia repair surgery took place and the plaintiff was allegedly injured by a defective hernia mesh patch. The court cited to *Porter* and *Christensen* and concluded that "a hospital cannot be strictly liable if it was the site of the surgery and the predominant purpose of the procedure was the product implant."

7

*Roberts v. Davol, Inc.*, No. 09-61662-CIV, 2010 WL 9596575, at *1 (S.D. Fla. July 14, 2010) (internal citations omitted).

Similarly, Plaintiffs here allege that the hernia surgery "certainly could have been rendered without using the defective product." (ECF No. 25 at PageID #448.) However, the court in *Roberts* concluded that in claiming that the hospital must show that the hernia could not have been repaired without a mesh, the plaintiffs "misread the standard." *Roberts*, 2010 WL 9596575, at *1 (S.D. Fla. July 14, 2010). The court instead explained that the standard is whether "'the predominant purpose of the procedure was the [product] implant.'" *Id.* (quoting *Porter*, 650 So.2d at 83). As in *Roberts*, the predominant purpose of the procedure was to repair Mr. Leto's hernia, "for which the health care provider exercised its professional judgment in determining the appropriate product to utilize with the procedure." *Id.* Therefore, this Court agrees that "the selection of the patch was integrally related to the professional services and skills of providing and facilitating the surgery offered by [Key West]." *Id.*

Plaintiffs' claims are based on their allegation that Key West was a seller of the Composix L/P and Mr. Leto was the ultimate consumer. *Porter* offered examples of the distinction between healthcare professionals as service providers and as sellers—a "nutrition doctor selling diet products or a dentist selling electric toothbrushes" are examples of when "the sales or distribution aspect in the particular transaction between the health care provider and the patient predominates over the services aspect." 650 So. 2d at 83, n.2. Here, Key West did not act as a seller or distributor of the Composix L/P but used the product "in the course of its primary function of providing medical services." *Id.* at 83. "An injured person would be impermissibly circumventing the requirements and restrictions of the medical malpractice statute by selectively claiming that the [hospital] was only acting in [its] role as a distributor of a product when in fact the distribution

8

was incidental to the provision of medical services." *Id.* at 82; *see also Lederman v. Howmedica Osteonics Corp.*, No. 8:13-CV-506-T-30AEP, 2013 WL 1460036 (M.D. Fla. Apr. 10, 2013).

Plaintiffs argue that their Amended Complaint cannot be dismissed under Rule 12(b)(6) because it states Key West is a seller and "it is the law that all well-pleaded allegations must be accepted as true." (ECF No. 25 at PageID #449.) However, Plaintiffs' contention that Key West was a seller of the Composix L/P is not a factual allegation, but a legal conclusion asserted in the Amended Complaint. The essential facts alleged in the Amended Complaint are: Mr. Leto underwent a hernia repair surgery at Key West's hospital (ECF No. 17 at ¶ 16), during the procedure the surgeon used a Composix L/P mesh to repair the hernia (*id.* at ¶ 22), Mr. Leto suffered complications from the implantation of the Composix L/P mesh (*id.* at ¶ 24), and Mr. Leto underwent a surgical repair and removal of the Composix L/P mesh (*id.* at ¶25). For the purposes of considering this 12(b)(6) motion, the Court accepts all of these factual allegations as true. However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Although for the purposes of a motion to dismiss [a court] must take all of the factual allegations in the complaint as true, [a court is] 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Therefore, the Court is not required to accept as true Plaintiffs' legal conclusion that Key West was a seller of the Composix L/P for the purpose of their strict products liability claim. It is clear that under Florida law, Key West cannot be held liable under a theory of strict products liability for its use of the Composix L/P mesh in Mr. Leto's surgery. Nor can Key West be considered a seller of the mesh when it used the mesh "in the course of its primary function of providing medical services." *Porter*, 650 So. 2d at 83.

### 2. Breach of Implied Warranty Claim

Key West has also moved to dismiss Plaintiffs' claim for breach of implied warranty on similar grounds. Key West claims that because no privity of contract existed between Key West and Mr. Leto, this claim must be dismissed. In response, Plaintiffs claim that there was privity in connection with the sale of the Composix L/P mesh, and in the provision of medical services. (ECF No. 25 at PageID #452.) The Court has already addressed Plaintiffs' claims that Key West was a seller of the Composix L/P mesh in Section III.A.1. According to Plaintiffs, however, "[t]here is no requirement under Florida law for a defendant sued for breach of implied warranty to be a 'seller' of the product, so long as there is a direct contractual relationship between the injured plaintiff and the defendant." (*Id.*)

"Breach of implied warranty is an 'action in contract,'" and "requires a showing of contractual privity between the plaintiff and the defendant as an essential element of the action." *Affiliates for Evaluation & Therapy, Inc. v. Viasyn Corp.*, 500 So. 2d 688, 691 (Fla. Dist. Ct. App. 1987) (quoting *West v. Caterpillar Tractor Co.*, 336 So.2d 80, 88 (Fla.1976)). Plaintiffs rely on *Hurley v. Larry's Water Ski School* to support their argument that privity of contract exists and that Key West is subject to a claim of breach of implied warranty even if it was not a "seller" of the Composix L/P mesh. In *Hurley*, the Eleventh Circuit noted that "Florida courts have extended products liability law to hold lessors and bailors for hire liable for breach of implied warranty and under strict liability in the same manner that manufacturers, assemblers and sellers may be." *Hurley v. Larry's Water Ski Sch.*, 762 F.2d 925, 927–28 (11th Cir. 1985). Therefore, according to Plaintiffs, "the absence of a buyer/seller relationship will not negate the existence of 'privity'" for the purpose of their claim for breach of implied warranty. (ECF No. 25 at PageID #452.) However, the very next sentence in *Hurley* explains that "Florida's decision to extend these types

of liability to leases and bailments stemmed from its perception of the need to extend the same protection to consumers who *rent and lease* as had already been afforded to consumers who buy." *Hurley*, 762 F.2d at 928 (emphasis added). The court then agreed that the implied warranty of fitness was applicable to the defendant as a "supplier." *Id.*

Plaintiffs make no claim that Mr. Leto rented or leased the Composix L/P mesh from Key West, and this Court extends its reasoning in concluding that Key West was not a seller to conclude that Key West also was not a "supplier." Key West used the Composix L/P mesh "in the course of its primary function of providing medical services," and it would be "impermissibly circumventing the requirements and restrictions of the medical malpractice statute by selectively claiming that [Key West] was only acting in [its] role as a distributor of a product when in fact the distribution was incidental to the provision of medical services." *Porter*, 650 So. 2d at 82.

Similar to their argument that Key West was a seller of the Composix L/P, Plaintiffs argue that their breach of implied warranty claim cannot be dismissed under Rule 12(b)(6) because the Amended Complaint "expressly alleges that the Plaintiff Mr. Leto enjoyed contractual privity with [Key West] as [its] customer." (ECF No. 25 at PageID #451 (internal citation omitted).) However, as the Court explained in Section III.A.1, "[a]lthough for the purposes of a motion to dismiss [the Court] must take all of the factual allegations in the complaint as true, [the Court is] 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Therefore, the Court is not required to accept as true Plaintiffs' legal conclusion that privity of contract existed between Mr. Leto and Key West.

3. **Negligent Misrepresentation Claim**

Key West also moves to dismiss Plaintiffs' claim for negligent misrepresentation on the ground that "Plaintiffs' complaint utterly lacks any facts about specific misrepresentations, let

11

alone which defendant purportedly made them, to whom they were made, and when." (ECF No. 20 at PageID #416.) To succeed on a claim of negligent misrepresentation, a plaintiff must allege that:

> (1) the defendant made a misrepresentation of material fact that he believed to be true but which was in fact false; (2) the defendant was negligent in making the statement because he should have known the representation was false; (3) the defendant intended to induce the plaintiff to rely ... on the misrepresentation; and (4) injury resulted to the plaintiff acting in justifiable reliance upon the misrepresentation.

*Romo v. Amedex Ins. Co.*, 930 So. 2d 643, 653 (Fla. Dist. Ct. App. 2006) (internal citations omitted). In support of its motion, Key West cites to *Beale v. Biomet, Inc.*, in which the court held that when the plaintiffs "failed to identify a single false or misleading statement" by the defendant, they "failed to establish the first requisite prong of a claim for negligent misrepresentation." 492 F. Supp. 2d 1360, 1374–75 (S.D. Fla. 2007). Because Plaintiffs fail to identify a single false or misleading statement, Key West argues, their claim for negligent misrepresentation as it relates to Key West must be dismissed.

Plaintiffs respond that the Amended Complaint "expressly alleges that 'Defendants also breached their duty in representing to [Mr. Leto], his physician, and the medical community that their product had no serious side effects different from older generations of similar products and/or procedures.'" (ECF No. 25 at PageID #453 (quoting ECF No. 17) (emphasis omitted).) According to Plaintiffs, their detrimental reliance on a misrepresentation is "implicit when reading the Amended Complaint as a whole."

Key West points out that Plaintiffs allege that Bard, the manufacturer of the Composix L/P mesh, did not disclose "the lack of safety and efficacy of their product . . . to [Mr. Leto], his physician, and/or the public at large." (ECF No. 17 at PageID #390.) According to Key West, the claim that Bard "concealed and withheld material information about the Composix L/P from Mr.

12

Leto's physicians and the healthcare community" undercuts and refutes their claims that Key West was aware of the device's alleged dangers. (ECF No. 26 at PageID #465.) Additionally, Key West argues that "[t]here is no allegation that [Key West] played any role in the design, manufacture, warnings, or marketing of the Composix L/P and [Key West] does not—and could not—have had access to information that was allegedly withheld." (*Id.*)

The Court agrees with Key West that Plaintiffs' Amended Complaint lacks any facts about specific misrepresentations made by Key West. The Court also rejects Plaintiffs' claim that detrimental reliance on any misrepresentation is implied in the Amended Complaint. The Amended Complaint only contains a conclusory recitation of the elements of negligent representation without any supporting facts. As explained above regarding Plaintiffs' claims for strict products liability and breach of implied warranty, the Court is not required to accept as true Plaintiffs' legal conclusion that Key West breached its duty and made a negligent misrepresentation. The Amended Complaint "does not identify the alleged misrepresentations, how [Key West] induced Plaintiff[s] to act on the misrepresentations, and the manner in which Plaintiff[s] justifiably relied on [Key West's] alleged misrepresentations." *Kaufman v. Pfizer Pharms., Inc.*, No. 1:02-CV-22692, 2010 WL 9438673, at *6 (S.D. Fla. Nov. 23, 2010). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (internal citations omitted). Therefore, Plaintiffs' claim of negligent misrepresentation as it relates to Key West must be dismissed.

### B. Plaintiffs' Motion for Suggestion of Remand

Plaintiffs have filed a motion requesting that the Court suggest to the JPML that this case be remanded. (ECF No. 12.) "The ultimate authority for remanding an action transferred for multidistrict litigation lies with the [JPML] itself." *In re Methyl Tertiary Butyl Ether Prods. Liab.*

*Litig.*, No. 04 Civ. 4968 (VSB), 2017 WL 5468758, at *2 (S.D.N.Y. Nov. 13, 2017); *see also* 28 U.S.C. § 1407(a). JPML Rule 10.1(b)(i) permits a transferee district court in a multidistrict litigation (MDL) to make a suggestion of remand to the JPML. District courts rely on the same standards for remand as the JPML when determining whether to make a suggestion of remand. *In re Bridgestone/Firestone, Inc.*, 128 F. Supp. 2d 1196, 1197 (S.D. Ind. 2001). "[A] party seeking remand to the transferor court has the burden of establishing that such remand is warranted." *In re Integrated Res., Inc. Real Estate Ltd. P'ships Sec. Litig.*, 851 F. Supp. 556, 562 (S.D.N.Y. 1994).

Plaintiffs claim that this case must be remanded on the ground that this Court lacks subject matter jurisdiction because there is no complete diversity of citizenship, as Plaintiffs and Key West are all Florida citizens. (ECF No. 12 at PageID #157.) However, because the Court has dismissed Plaintiffs' claims against Key West, Plaintiffs Motion for Suggestion of Remand is now moot.

### IV. Conclusion

Key West's Motion to Dismiss (ECF No. 20) is **GRANTED**. The Clerk is directed to dismiss Defendants Key West HMA, Inc. d/b/a Lower Keys Medical Center and Key West HMA, LLC d/b/a Lower Keys Medical Center from this action. Key West's earlier motion to dismiss (ECF No. 11) is **DENIED AS MOOT**. Plaintiffs' Motion for Suggestion of Remand (ECF No. 12) is **DENIED AS MOOT**.

IT IS SO ORDERED.


**10/3/2022**                                       s/Edmund A. Sargus, Jr.
**DATE**                                          **EDMUND A. SARGUS, JR.**
                                                    **UNITED STATES DISTRICT JUDGE**